IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **SANDRA J. EAVES,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 5:07-CV-1694-JHH |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner of Social Security,** } | |
| } | |
| **Defendant.** } | |

**MEMORANDUM OPINION**

Plaintiff, Sandra J. Eaves, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.     Proceedings Below**

Plaintiff filed her application for SSI protectively on January 5, 2005, (R. 24, 47-53), alleging a disability onset date of January 1, 2001, (R. 47), which was amended later to January 5, 2005, (R. 194). Plaintiff's application was denied initially and upon reconsideration, (R. 31-37), and on May 17, 2005, Plaintiff timely filed a request for a hearing, (R. 39).

Plaintiff's request was granted, (R. 41), and a hearing was held before an Administrative Law Judge ("ALJ") on August 15, 2006, in Decatur, Alabama, (R. 192-230). Plaintiff and Vocational Expert ("VE") Karen Vessell provided testimony at the hearing. (R. 197-230). After the hearing,

the ALJ kept the record open for additional evidence, (R. 195), which was submitted by Plaintiff post-hearing, (R. 3).

In the October 13, 2006 decision, the ALJ determined that Plaintiff was not eligible for SSI because she was not under a "disability," as defined by the Act, at any time before the date of decision. (R. 24-31). Thereafter, on November 6, 2006, Plaintiff requested review of the ALJ decision by the Appeals Council. (R. 8-12, 20). After the Appeals Council denied Plaintiff's request for review on July 19, 2007, (R. 4-6), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the ALJ decision, Plaintiff was forty-six years old, (R. 29, 31, 197), a "younger" individual pursuant to 20 C.F.R. § 416.963(c), with a high school-equivalent education,[1] (R. 29, 199-200). Although Plaintiff reported having worked many different jobs, (R. 88), the ALJ found her only past *relevant* work to be that of landscape laborer, which is heavy in exertional level and unskilled. (R. 226). Plaintiff claims that since her alleged onset date of January 5, 2005, she has been unable to work due to back problems, a blood disorder, carpal tunnel in both wrists, incontinence, hearing loss, vertigo, and vision problems. (R. 11, 20, 105, 194).

At the August 2006 hearing, Plaintiff reported that she first began having back trouble in 2001, when her chiropractor diagnosed her with scoliosis and disc problems. (R. 208-09). Plaintiff stated that, in the months leading up to the hearing, her pain had become "excruciating," specifically "a pulling, burning sensation that comes from across [her] lower back into [her] hip, and then down

---

[1] The ALJ found her to have "at least a high school education." (R. 29). Plaintiff testified that she only completed the tenth grade, although she later received a General Equivalency Diploma ("GED"). (R. 199-200).

[her] leg." (R. 210). Plaintiff reported that her pain upon sitting is a "5" on a scale of one to ten, although her pain "goes up over ten if I'm up trying to walk around, trying to do things." (R. 214).

When the ALJ, in an effort to determine what aggravates Plaintiff's pain, questioned her about the performance of various activities, Plaintiff reported that she is "all right pretty much sitting" but that she "can't walk too far without having to find somewhere to sit down because [of] the pain." (R. 210). According to Plaintiff, her "legs have f[allen] out from under [her] about three or four times" because of the pain and numbness. (R. 215). Plaintiff stated that she experiences pain in her back when she bends, picks up heavy objects, and pulls. (R. 221).

Plaintiff approximated that she is able to lift five pounds with either hand, and that she can pick up a gallon of milk but "strain[s]." (R. 222). Plaintiff estimated that she can walk approximately fifty feet before she needs to take a break. (R. 222). Plaintiff also reported that she is able to drive, shower, cook, do the dishes, do laundry, vacuum floors, grocery shop, clean the house, and take care of her personal needs. (R. 28, 123-25, 198, 213, 225).

Finally, Plaintiff testified that she began experiencing hearing difficulties and vertigo in the few years prior to the hearing. (R. 212). Plaintiff was prescribed medication for vertigo that "keeps it . . . from messing too much of [her] life up," although she admits that she "do[es]n't take [the medication] every day like [she] should." (R. 212).

## II.  ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's

impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

In his October 13, 2006 decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability on January 5, 2005.[2] (R. 26 at Finding No. 1). He also found that, during the relevant time period, Plaintiff had the following medically determinable impairments, which he deemed to be "severe": lumbar scoliosis, asthma,

---

[2] The ALJ's decision contains a typographical error referring to Plaintiff's onset date as "January 5, 2001" instead of "January 5, 2005." (R. 26).

bronchitis, essential hypertension, and vertigo. (R. 26-27 at Finding No. 2).  Nevertheless, he determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1.  (R. 26-27 at Finding No. 3).  According to the ALJ, Plaintiff's subjective complaints concerning her alleged impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record.  (R. 27-29 at Finding No. 4).

Thus, the ALJ found that Plaintiff has retained the physical residual functional capacity ("RFC") to perform sedentary work, *i.e.,* work which is generally performed while sitting and does not require lifting in excess of ten pounds (20 C.F.R § 416.968(a)), and light work, *i.e.,* work which involves lifting no more than twenty pounds at a time (20 C.F.R § 416.968(b)). (R. 27-29 at Finding No. 4).  The ALJ noted, based upon Plaintiff's testimony at the hearing, that she can lift five pounds with either arm; lift one gallon of milk with the right arm, albeit with straining; lift twenty pounds with both hands; sit for thirty minutes; stand for five minutes; and walk fifty feet. (R. 27 at Finding No. 4).

The ALJ sought testimony from VE Karen Vessell at the administrative hearing, and he posed several hypothetical questions to Vessell regarding different scenarios of functional capacity. (R. 226-29).  With Vessell's help, the ALJ determined that Plaintiff is unable to perform her past relevant work, (R. 29 at Finding No. 5, 226), but he concluded that Plaintiff could perform other unskilled jobs at the sedentary to light exertional level which exist in significant numbers in the national economy, including occupations such as telephone quotation clerk (Dictionary of Occupational Titles 7 ("DOT") § 237.367- 046), optical goods assembler, (DOT § 713-687-018), and food order clerk (DOT § 209-567-014). (R. 29-30 at Finding No. 9, 226-37). Accordingly, the

ALJ found that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of decision. (R. 30 at Finding No. 10).

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 7, at 10-11). Plaintiff's arguments focus on the ALJ's RFC finding, which she contends was not supported by substantial evidence and/or was derived by the application of improper legal standards. Specifically, Plaintiff contends that the RFC finding: (1) is internally inconsistent; (2) fails to reflect a physician's findings; (3) improperly discredits her subjective complaints under the Eleventh Circuit "pain standard;" and (4) was not well-supported because the ALJ failed to further develop the record. (Doc. # 7, at 5-10).

### IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383© mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.  Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's request for remand and/or reversal. As noted earlier, Plaintiff's arguments center on the ALJ's RFC calculation, which the court finds to be supported by substantial evidence and the application of proper legal standards. The court has carefully considered each of the four components of Plaintiff's argument, the analysis of which follows.

### A.  The ALJ's RFC Finding is Not Internally Inconsistent

Plaintiff's first contention that the ALJ's RFC findings are contradictory is based upon the following analysis:

> The ALJ found that Ms. Eaves can lift five pounds with the right arm and left arm and lift one gallon of milk with the right arm but with straining (R. 27). On its face this assessment is contradictory. If Plaintiff is indeed limited to lifting five pounds with each arm, then she cannot lift more than that weight with either arm, left or right.

(Doc. # 7, at 5-6). In other words, Plaintiff believes that it was illogical for the ALJ to find, on the one hand (literally), that she could strain to lift an eight-pound gallon of milk while at the same time finding, on the other hand, that she could readily lift five pounds with either arm.

Plaintiff's argument is certainly ironic considering that the ALJ's specifications of Plaintiff's lifting ability are based upon nothing other than her *own* testimony at the hearing:

> ALJ: How much can you lift with your right hand?
>
> ...
>
> CLMT: I don't know, maybe five pounds.
>
> ALJ: And how about with the left?
>
> CLMT: About the same.
>
> ALJ: Okay. Can you lift a gallon of milk with your right hand?
>
> CLMT: Yeah . . . . [i]t's a strain, but yes, I can pick it up.

(R. 221-22). If Plaintiff is correct that being able to lift five pounds cannot be reconciled with the ability to lift a gallon of milk while straining, it is due to an inconsistency in *her testimony* – not the ALJ's findings.

**B.    The ALJ Was Not Required to Rely on a Physician's Opinion When Calculating RFC**

Next, Plaintiff suggests - contrary to the great weight of authority - that the ALJ's RFC findings should have been based upon an "RFC assessment by any examining or reviewing physician." (Doc. # 7, at 7). RFC is defined as "the adjudicator's ultimate finding of 'what you can still do despite your limitations.'" SSR 96-5p, 61 Fed. Reg 34471, 34473 (1996) (citing 20 C.F.R. §§ 416.945 and 416.946). The regulations make clear that the sole responsibility for determining

Plaintiff's RFC falls on the ALJ. 20 C.F.R. §§ 404.1527(e)(2); 404.1545(a) (2007). While an ALJ should review all of the medical evidence, and can consider opinions from acceptable medical sources when calculating RFC, "the final responsibility for deciding [those] issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996).

Indeed, RFC findings "are not medical opinions,. . . but are, instead, . . . administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 416.927(e); *see* SSR 96-5p. Thus, the RFC should be "based on all the relevant evidence in [the claimant's] case record," including the plaintiff's testimony of her abilities. 20 C.F.R. § 416.945(a)(1). As the Commissioner points out, "[r]equiring an ALJ's residual functional capacity finding to be based on the opinion of a doctor 'would, in effect, confer upon the [doctor] the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.' SSR 96-5p." (Doc. # 8, at 9).[3]

In this case, the ALJ's RFC calculation that Plaintiff can perform sedentary to light work is based upon nothing less than Plaintiff's *own testimony* of "what [she] can still do despite [her] limitations." 20 C.F.R. §§ 416.945 and 416.946. Although the ALJ outlined both the relevant

---

[3] Plaintiff's argument on this matter is somewhat confusing. Although Plaintiff acknowledges that "there is no express requirement for a medical source opinion or RFC assessment to be of record in order for the ALJ to make RFC findings," she then inexplicably assert that "the ALJ is required to review and accord weight to medical opinion [sic], and as a practical matter, to avoid substituting his or her judgment for that of a physician." (Doc. # 7, at 7). The assessment of RFC either is or is not the ALJ's prerogative. Plaintiff cannot argue it both ways.

medical[4] and nonmedical evidence before articulating his RFC, it appears that his assessment was derived primarily from Plaintiff's hearing testimony. (R. 26-29). When the ALJ questioned Plaintiff about the performance of various activities in an effort to determine what aggravates her pain, Plaintiff reported that she is "all right pretty much sitting" but "can't walk too far [later specified by Plaintiff as fifty feet] without having to find somewhere to sit down because [of] the pain." (R. 210; *see also* R. 222). Plaintiff stated that she experiences pain in her back when she picks up heavy objects, but she estimated that she can lift eight pounds (*i.e.,* a gallon of milk) with "straining." (R. 221-22). Plaintiff also reported that she is able to drive, shower, cook, do the dishes, do laundry, vacuum floors, grocery shop, clean the house, and take care of her personal needs. (R. 28, 123-25, 198, 213, 225).

Consistent with Plaintiff's daily life activities, her estimation of her abilities, and the medical evidence of record, the ALJ found that Plaintiff can perform sedentary to light work. In so finding, the ALJ actually *rejected* the RFC assessment of the state agency medical consultants opining that Plaintiff could perform work at the medium exertional level, (R. 126-33), and opted instead to reduce her RFC to the lower exertional levels of light and sedentary, (R. 28-29). The ALJ was not only

---

[4] The court further rejects Plaintiff's contention that the ALJ failed to evaluate all of the medical evidence and specifically failed to review updated records from the period July 2006 to September 2006. (Doc. # 7, at 7-8). The 2006 records include a chest x-ray showing scoliosis of the thoracic spine and an MRI of the lumbar spine showing multilevel diffuse degenerative disk changes. (Doc. # 7, at 8; R. 155-191). Contrary to Plaintiff's suggestion that the ALJ did not consider this evidence in determining RFC or in assessing her credibility, the ALJ's opinion specifically discusses the updated treatment records. (R. 27, at Finding No. 2).

entitled to formulate his own RFC findings, but those findings are supported by substantial evidence - primarily Plaintiff's own testimony.[5]

### C. The ALJ Properly Discredited Plaintiff's Pain Complaints Pursuant to the Pain Standard

Next, Plaintiff challenges the ALJ's assessment of her subjective complaints because she believes that "[t]he MRI of August 2006 provided uncontravertible [sic] evidence that Ms. Eaves' complaints of back pain were credible." (Doc. # 7, at 8-9). It is axiomatic that the Act and its related regulations provide that a claimant's statements about pain or other symptoms *will not alone* establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at

---

[5] To the extent Plaintiff contends that the ALJ's findings failed to comport with SSR 96-8p, that argument is not persuasive. Although the ALJ did not specifically indicate the frequency with which Plaintiff could perform each specified lifting activity, he noted that Plaintiff "could rarely lift twenty pounds with both hands." (R. 226). The Eleventh Circuit has held that an ALJ is not required to cite to specific phrases or formulations as long as the reviewing court can determine what statutory and regulatory requirements the ALJ did apply. *See Jamison v. Bowen*, 814 F. 2d 585, 588-89 (11th Cir. 1987).

1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the ALJ fails to credit a claimant's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses. Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard, *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In this case, the ALJ's analysis comports with the requirements of the pain standard for evaluating Plaintiff's subjective complaints, indicating that proper legal standards were applied in his analysis and that he considered Plaintiff's symptoms and subjective complaints in light of the steps outlined above. (R. 20-21). The ALJ reached his conclusions after a thorough review of the opinions of Plaintiff's treating and examining sources, (R. 16-21), which support his ultimate determination. *See* C.F.R. § 404.1529(c)(2).

Although the ALJ determined that the objective evidence establishes medically determinable impairments that could produce Plaintiff's alleged symptoms, (R. 26-28), he nevertheless found that her statements about the intensity, persistence and limiting effects of those impairments are not entirely credible, (R. 28). In so finding, the ALJ discussed all of Plaintiff's medical records, including the particular August 2006 MRI to which Plaintiff refers in her brief, (R. 27), which revealed mild to moderate multilevel diffuse degenerative disk changes, (R. 185). That Plaintiff suffers from even *moderate* disc changes does not establish the credibility of her complaints of *severe* pain, however. As the Eleventh Circuit has stated, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

Indeed, the record evidence is contrary to Plaintiff's complaints of severely disabling pain: no examining or treating physician of record has ever prescribed significant limitations or restrictions as a result of objective medical findings. (R. 155-191). Nevertheless, the ALJ's opinion indicates that he did not totally discredit Plaintiff's pain complaints -- he rejected the State Agency's RFC recommendation in favor of a lower exertional requirement *because of* Plaintiff's testimony. (R. 28-29). Finding her to be "limited, but [] able to perform at least some type of work activity" at the sedentary to light level, the ALJ simply discredited "[h]er allegations to the contrary." (R. 29). Because nothing in the record indicates that Plaintiff's pain is so severe that it prevents her from performing *any* work at even the lowest exertional levels, the ALJ did not err in discrediting Plaintiff's subjective complaints.

**D.     The ALJ Did Not Err by Failing to Further Develop the Record**

Finally, Plaintiff contends that the ALJ erred by failing to further develop the record, and she suggests that he "might have considered obtaining a more contemporaneous consultative evaluation to obtain a more specific RFC assessment . . . . [and] might have scheduled a supplemental hearing possibly with the assistance of a medical expert." (Doc. # 7, at 10). Although the law establishes that an ALJ generally is obligated to develop the record, the ALJ in this case did not err by failing to schedule additional consultative evaluations. The Eleventh Circuit has held:

> Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision.

*Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007)(citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)). This is not a case where further development was necessary or even warranted – the record was adequately developed for the ALJ to make a disability determination. *See* SSR 96-2p, 61 Fed. Reg. 34490, 34491 (1996) ("Ordinarily, development should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed."). Indeed, Plaintiff's testimony about her abilities and limitations, as discussed in detail earlier, was unequivocal.

The law is clear that while the ALJ has the duty to "investigate the facts and develop the arguments both for and against granting benefits," *Sims v. Apfel*, 530 U.S. 103, 111 (2000), the *claimant* has the responsibility to produce evidence in support of her disability claim, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Evidence regarding the specific limitations and restrictions Plaintiff experiences in her ability to work is evidence Plaintiff is responsible for

14

producing. *See Ellison,* 355 F.3d at 1276. Accordingly, it is Plaintiff, and not the ALJ, who carries the burden to provide a medical record that is complete. *See* 20 C.F.R. §§ 416.913(e), 416.916. As the Commissioner points out, "[a]n ALJ is not required to go on a fishing expedition to prove Plaintiff's disability claim or otherwise act as her counsel." (Doc. # 8, at 15).

### VI. Conclusion

For all of these reasons, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the ___1st___ day of December, 2009.

_____
SENIOR UNITED STATES DISTRICT JUDGE